UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PROVOKE INSIGHTS, LLC

    Plaintiff,

- against -

THE HOLMES REPORT LLC a/k/a Provoke Media

Docket No.

**COMPLAINT**

**COMPLAINT**

Plaintiff PROVOKE INSIGHTS, LLC ("Plaintiff"), by its attorneys Pierce & Kwok LLP, alleges the following as and for its complaint against THE HOLMES REPORT LLC a/k/a PROVOKE MEDIA ("Defendant"):

**NATURE OF THE ACTION**

1. This is an action for (i) trademark infringement and unfair competition under § 32 (1) of the Lanham Act, 15 U.S.C. § 1114(1); (ii) unfair competition and false designation of origin under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(c); (iii) dilution under the laws of New York State, GEN. BUS. Law § 360-1; (iv) unfair and deceptive trade practices under the laws of New York State, N.Y. GEN. BUS. Law § 349; and (v) unfair competition under the common law of the State of New York. Plaintiff seeks permanent injunctive relief, an accounting, statutory damages, compensatory damages, recovery of their costs and attorneys' fees, and other relief authorized by the Lanham Act, and applicable state and common law.

**JURISDICTION AND VENUE**

2. This action arises under the Lanham Act, 15 U.S.C. §§ 1051 et seq. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1338(b), and 1367 under principles of pendent jurisdiction.

3. Venue is proper pursuant to 28 U.S.C. §§ 1391 (a), (b), and (c).

4. This Court has personal jurisdiction over the Defendant pursuant to New York Civil Practice Law and Rules §§ 301 and 302 because Defendant has its principal place of business (its nerve center) in New York State and, separately, since the harm alleged by Plaintiff stems from conduct by Defendant originating in New York State, County of New York.

## THE PARTIES

5. Plaintiff PROVOKE INSIGHTS, LLC is a domestic limited liability company organized and existing under the laws of New York having its principal place of business address at 136 East 76th Street, 4a New York, NY 10021.

6. Defendant THE HOLMES REPORT LLC a/k/a Provoke Media is a limited liability company having its principal place of business at 271 West 47th Street Suite 23-A, New York, NY 10036.

## BACKGROUND

7. Plaintiff is the sole owner of the trademark, "Provoke Insights", as that term is used to denote the source for (i) branding services, including consulting, development, management and marketing of brands for businesses and/or individuals; (ii) marketing research; (iii) marketing services, and (iv) training courses in strategic planning relating to advertising, promotion, marketing and business (collectively, the "Trademark Registered Services").

8. Plaintiff's trademark was registered with the United States Patent and Trademark Office (USPTO) on January 20, 2017. *See* registration of the trademark (the "Registration") annexed hereto as **Exhibit A** and incorporated by reference herein

9. Accordingly, Plaintiff's trademark is deemed *prima facie* valid and enforceable.

10. The entirety of Plaintiff's trademark (the "Trademark" or "Plaintiff's Trademark") at issue is comprised of the words "Provoke Insights" with the colors orange and black claimed as features of the mark. The word "PROVOKE" is in a stylized font in the color orange, and the word "INSIGHTS" is in a stylized font in the color black. The word "PROVOKE" is above the word "INSIGHTS". Both words are justified to the right.

11. In addition to the Trademark Registered Services, Plaintiff has also sought to register the Trademark for public relations and advertising services (the "Trademark Applied-for Services").

12. The Trademark also has protection in the United Kingdom for the Trademark Registered Services and the Trademark Applied-for Services. *See* the World Intellectual Property Organization/Madrid Protocol Registration annexed hereto as **Exhibit B**

13. Plaintiff began using the Trademark in interstate commerce on October 10, 2013 ("First Use Date") to allow consumers to identify the Trademark as a source for both the Trademark Registered Services and the Trademark Applied-for Services and has continuously used the Trademark for the foregoing services since the First Use Date. *See* evidence (the "Evidence") of Plaintiff's continuous use of the Trademark to denote Trademark Registered Services and the Trademark Applied-for Services annexed hereto as **Exhibit C** and incorporated by reference herein.

14. Both the Trademark Services and Trademark Applied-for Services are successful commercial services that Plaintiff provides, markets, and sells to companies and individuals in the United States under the Plaintiff's Trademark.

15. Defendant is in the business of owning and operating an aggregator website, www.provokemedia.com (the "Defendant's Site"), which scours the web and compiles articles and other information related to public relations, marketing, and advertising services (collectively, "Defendant's Services" or the "Exclusive Services").

16. On the Defendant's Site, it uses "Provoke" as its trademark to identify Defendant's Services.

17. As is custom for Plaintiff in its ongoing efforts to strengthen the popularity of its Trademark, and to police its usage, it routinely monitors its search engine optimization ("SEO") and rank of the Plaintiff's Trademark.

18. Also customary for Plaintiff, every few weeks, it uses Google to search for any press references to its Trademark, or references made thereto by other outlets.

19. In June of 2020 while performing these searches, Plaintiff noticed that Defendant's trademark and Defendant's Services began to usurp the Trademark, Trademark Registered Services, and the Trademark Applied-for Services in SEO ranking.

20. Specifically, at some point in 2020, Defendant started using the tag words "insights," "provoke," "research, "marketing," and other similar words used by Plaintiff to identify the Trademark Registered Services and Trademark Applied-for Services, in Defendant's metadata on the Defendant's Site, so that when consumers use Google to search for a provider of marketing, advertising, and public relations services, it will be directed to the Defendant's Site, instead of to Plaintiff's website, www.provokeinsights.com (the "Plaintiff's Site").

21. SEO ranking is critical to a website's ability to attract to new customers.

4

22. Other than by referrals, most of Plaintiff's customers are acquired through the Plaintiff's Site.

23. Websites with the highest SEO ranking will appear on Google's first page when a potential customer enters certain tag words into Google's search engine.

24. Google is the search engine used by most people in the United States, including Plaintiff's prospective customers, when they are looking for companies that provide particular services, such as the Trademark Registered Services, Trademark Applied-for Services, and the Exclusive Services.

25. Research has shown that only websites listed on Google's first page are likely to attract new customers, which is why having a high SEO ranking is essential.

26. Customers believe that the higher the website's ranking, the more trustworthy and suitable it is to satisfy the customer's needs.

27. A website's developer or manager must be continually updating the website and creating content that includes important search terms, or "tag words," that the developer or manager believes most customers are likely to use when searching Google for goods or services that the website offers.

28. Plaintiff has spent thousands of dollars and hundreds of hours of labor to ensure Plaintiff's Site has a strong SEO ranking.

29. Defendant is using the similarity of its trademark to that of the Plaintiff's Trademark to sow confusion among the public and divert customers from Plaintiff's Site to Defendant's Site.

30. So now, when a customer uses Google to find a provider of public relations or marketing services by entering in the words "provoke" and "public relations" or "provoke and marketing" in the search engine, it will get Defendant's listing above Plaintiff's. *See* screenshot of Google when the words "provoke" and "public relations" and "provoke" and

marketing" were entered on December 16, 2020 annexed hereto as **Exhibit D** and incorporated by reference herein

31. And when prospective customer enters "provoke" and "advertising" into Google's search engine, even though Plaintiff's Site appears above the Defendant's Site, the Defendant's Site is directly competing against Plaintiff's Site since it is the listing that appears below it. *See* screenshot of Google when the words "provoke" and "advertising" were entered on December 16, 2020 annexed hereto as **Exhibit E** and incorporated by reference herein

32. Further, when potential consumers of the Services visit Google and enter "provoke" and "research", or "provoke" and "survey", Defendant's Site appears close in ranking to Plaintiff's Site, or it is the first listing displayed, thereby unfairly supplanting Plaintiff. *See* screenshot of Google when the words "provoke" and "research" or "provoke" and "survey" were entered on December 28, 2020 annexed hereto as **Exhibit 1** and incorporated by reference herein

33. "Surveys" and "research" are concomitant terms used to search for marketing research firms.

34. If Defendant were using these terms by themselves, it would not be problematic.

35. However, Defendant has incorporated these terms, along with "provoke", in its SEO scheme.

36. That Defendant's Site competes against Plaintiff's Site on Google is not the issue.

37. The issue is that Defendant uses the term "provoke" as part of its trademark to inform the public that it is the source for public relations, advertising, and marketing sources.

38. Below is a side-by-side comparison of the competing trademarks:

6

| The Trademark | The Defendant's trademark (the "Defendant's Trademark") |
|---|---|
|  |  |

39. *See* a screenshot of Defendant's Trademark as it appears on Defendants' site as of December 16, 2020 annexed hereto as **Exhibit F** and incorporated by reference herein

40. Plaintiff did not claim the Trademark's font size nor capitalization scheme as elements thereof in its registration.

41. Therefore, as long as it maintains the Plaintiff's Trademark's font (the type of font, but not the font's size), coloring, and justification to the right, as claimed in its application, it can display the Plaintiff's Trademark however it chooses.

42. "PRovoke" is not a registered trademark with the USPTO.

43. Thus, there is no limitation to the way the Defendant's Trademark can appear in commerce.

44. Moreover, the design element featured in the Defendant's Trademark above, the blue, tilted triangle at the top left corner of the "P" in "Provoke", does not have to be included every time the Defendant's Trademark is displayed in interstate commerce.

45. Further, the "PR" in PROVOKE does not always need to be capitalized.

46. Therefore, Defendant may display only the literal portion of the Defendant's Trademark, "Provoke", as the source for the Defendant's Services.

7

47. Consequently, the Defendant's Trademark could employ the same font, font size, colors, and justification as the Plaintiff's Trademark.

48. Therefore, consumers encounter the Defendant's Trademark and the Trademark in the same trade channels, PROVOKE INSIGHTS v. PROVOKE; and here, there is clear and substantial similarity.

49. Moreover, since "Provoke" is the only verb and leading word in both the Plaintiff's Trademark and Defendant's Trademark, it is the dominant element in each of the competing marks.

50. If Defendant had applied to register Defendant's Trademark with USPTO, such application would have been denied because Plaintiff is the senior user thereof.

51. Therefore, since the dominant portion of the Plaintiff Trademark is "Provoke," which is the element of the Plaintiff's Trademark on which most customers would focus, and because the only literal, registerable element of the Defendant's Trademark is "Provoke," since Defendant would have to disclaim "Media" as being too descriptive, Defendant's usage of "PRovoke" to identify the Defendant's Services, which are services encompassed by the Trademark Services and Trademark Applied-for Services, constitutes trademark infringement.

52. Furthermore, as stated above, Defendant is purposefully using the term "insights" along with "Provoke", to divert consumers from Plaintiff's Site to Defendant's Site, thereby further negating any distinguishing effect that the word "Insights" in the Plaintiff's Trademark might otherwise have.

53. Accordingly, Defendant must discontinue the use of "Provoke" or "PRovoke" to identify Defendant's Services as it is unlawfully treading on Plaintiff's right to use that same mark as the source for public relation, advertising, and marketing services.

54. On Defendant's Site, a section reads:

    [A] comprehensive source of knowledge and information about the public relations business, including an extensive body of knowledge that includes case histories, original research and reporting.

55. Another section reads:

    [Defendant] delivers against its mission by providing the most sophisticated reporting and analysis on public relations trends and issues, along with an extensive global footprint of events and awards.

56. Moreover, on the website, Defendant claims to;

    elevate the status of the discipline by proving to senior executives that public relations is a mission critical management function…and by demonstrating to the wider public that public relations can and should serve as an advocate for more responsible business practices.

57. Webster's Dictionary defines public relations as "the business of inducing the public to have understanding for and goodwill toward a person, firm, or institution."

58. Its second primary definition for marketing is "the process or technique of promoting, selling, and distributing a product or service."

59. And, branding is defined as "the promoting of a product or service by identifying it with a particular brand."

60. Taken together, the above definitions show that there is likely an overlapping of services provided between public relations, branding, and marketing services.

61. Specifically, public relations firms are in the business of promoting their clients by increasing the goodwill between their clients and the public, so that consumers will purchase their clients' products and services.

62. Similarly, a marketing and branding firm devises strategic plans to promote a product or service and to have the public come to identify that service or product with a particular brand.

9

63. Moreover, Defendant's Site confirms that there is an overlap between marketing, branding, and public relations services because it states "Our weekly PRovoke podcast, which brings in guests from all across the world to discuss the latest developments in the ***marketing world.***" *(*emphasis added*)*

64. Defendant uses Defendant's Site, just as Plaintiff uses Plaintiff's Site, to attract interstate commerce.

65. The Defendant's Site and Defendant's Trademark are causing a likelihood of confusion, mistake, and confusion among consumers between the Defendant's Trademark and Plaintiff's Trademark, and between the Defendant's Site and the Plaintiff's Site.

66. Further, the Defendant's Trademark is diluting the distinctiveness of the Plaintiff's Trademark.

67. By causing such a likelihood of confusion, mistake, deception, and dilution of distinctiveness, Defendant is inflicting irreparable harm to Plaintiff's goodwill with the public.

68. The Court should issue the requested injunction to prevent Defendant's unlawful conduct from continuing to harm Plaintiff as well as deceive the public during the pendency of this case.

69. Upon information and belief, Defendant knowingly and willfully incorporates portions of the Plaintiff's Trademark in their entirety into Defendant's Trademark (i) for the sole purpose of deliberately attempting to exploit the fame and goodwill that Plaintiff has established in its brand, (ii) with the deliberate attempt at creating a false impression as to the source and sponsorship of Defendant's services, and (iii) to dilute the distinctiveness of Plaintiff's Trademark.

70. If Defendant's conduct is not enjoined, it will greatly injure the value of the Plaintiff's Trademark and Plaintiff's ability to distinguish its services.

71. Defendant's conduct is intentionally fraudulent, malicious, willful, and wanton.

72. On or around July 13, 2020, Plaintiff sent Defendant a letter informing it of Plaintiff's exclusive right to use "Provoke Insights" as a source indicator for public relations, marketing, and advertising services (the "July Letter"), and that it should immediately cease and desist the use of the mark "Provoke" for the same services. The letter laid out that their use was clearly creating and going to continue to create confusion and therefore constituted trademark infringement. As a matter of good faith and fair dealing, the July Letter even attempted to supply alterations that in Plaintiff's mind, would be sufficient to differentiate Plaintiff's Trademark from Defendant's Trademark. In response, any edit or alteration to the Defendant's Trademark was wholly refused. *See* a true and exact copy of that letter annexed hereto as **Exhibit H** and incorporated by reference herein.

73. Defendant has chosen to disregard the July Letter and continues to use Defendant's Trademark with impunity.

## COUNT I
## TRADEMARK INFRINGEMENT BY DEFENDANT (15 U.S.C. § 1114)

74. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 64 above, as if each were fully set forth herein.

75. Defendant uses the word "Provoke" in Defendant's Site and Defendant's Trademark to designate the foregoing as the source for public relations, marketing, and advertising services.

76. Defendant knows that Plaintiff has the sole right to use "Provoke" as a source indicator for the Exclusive Services.

11

77. Plaintiff is the senior user of "Provoke" as a source indicator for the Exclusive Services since it began using the term in 2013, whereas, upon information and belief, Defendant did not start using "Provoke" as a source indicator for the Exclusive Services until 2020.

78. Because of Defendant's unauthorized use of "Provoke" to denote the Exclusive Services, it is creating confusion, mistake, and/or deception among the public as to the source or sponsorship of Defendant's services.

79. As a result of Defendant's unauthorized use of "Provoke", the public is likely to be confused as to whether the Defendant's services are authentic and/or have been approved by Plaintiff.

80. In fact, actual confusion among the public as to the source of the Exclusive Services currently exists("Evidence of Confusion"). *See* Evidence of Confusion annexed hereto as **Exhibit G** and incorporated by reference herein

81. Defendants unauthorized use of the word "Provoke" in the United States to identify the Exclusive Services constitutes a false designation of origin and a false description or representation that Defendant's provision of such services is authorized by Plaintiff.

82. Defendants infringement of Plaintiff's Trademark, by incorporating the entirety of the word "Provoke", the dominant portion of Plaintiff's Trademark wherein Plaintiff claims exclusive use, to denote the Exclusive Services, is willful, intended to reap the benefit of the goodwill of Plaintiff, and violates Section 32 (1) of the Lanham Act, 15 U.S.C. § 1114(1).

83. The aforesaid conduct of Defendant is causing immediate and irreparable injury to Plaintiff and to its goodwill and reputation, and will continue both to damage Plaintiff and to deceive the public unless enjoined by this Court.

84. Plaintiff has no adequate remedy at law.

## COUNT II
## FEDERAL UNFAIR COMPETITION, FALSE DESCRIPTION AND FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

85. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 74 above, as if each were fully set forth herein.

86. Defendant's unauthorized use of the word "Provoke" in interstate commerce, the dominant portion of Plaintiff's Trademark wherein Plaintiff claims exclusive use, to denote the Exclusive Services constitutes a false designation of origin and a false description or representation that Defendant's sale of such services is authorized by Plaintiff and is, thus, likely to confuse customers.

87. Defendant's usage of "Provoke" in such a manner deprives Plaintiff of the ability to maintain the prestige, reputation, and safety of Plaintiff's brand and services.

88. Defendant is using "Provoke" with full knowledge that it is associated exclusively with Plaintiff and both the Trademark Services and Trademark Applied-for Services.

89. Defendant's acts of unfair competition are willful and deliberate and with an intent to reap the benefit of the goodwill and reputation associated with Plaintiff.

90. Defendants' sale and distribution of the Exclusive Services under Defendant's Trademark are in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

91. The aforesaid conduct of Defendant is causing immediate and irreparable injury to Plaintiff and to its goodwill and reputation, and will continue both to damage Plaintiff and to deceive the public unless enjoined by this Court.

92. Plaintiff has no adequate remedy at law.

## <u>COUNT III</u>
## **FEDERAL TRADEMARK DILUTION (15 U.S.C. § 1125(c))**

93. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 82 above, as if each were fully set forth herein.

13

94. The Plaintiff's Trademark is famous and well known throughout the United States, having been used exclusively and extensively for many years.

95. By reason of extensive advertising and use, including the over one million dollars that Plaintiff has spent promoting, policing, and marketing the mark, which includes but is not limited to the use of focus groups, the Plaintiff's Trademark has become highly distinctive and is uniquely associated with Plaintiff.

96. Defendant's commercial use of "Provoke" to identify the Exclusive Services has diluted and continues to dilute the distinctive quality of the Plaintiff's Trademark by lessening Plaintiff's capacity to identify and distinguish Plaintiff as the dominant source for the Exclusive Services bearing, or provided in conjunction with, the word "Provoke".

97. Defendant's unlawful use of "Provoke" as the main element of Defendant's Trademark is intended to and has the effect of trading on Plaintiff's reputation and causing dilution of Plaintiff's famous mark.

98. Upon information and belief, Defendant does not own any federal or state registrations or trademark applications for any mark that includes, in whole or in part, PROVOKE, and cannot assert any rights in the word PROVOKE that are prior to Plaintiff's first use of PROVOKE.

99. Defendant's conduct is in violation of Section 43 (c) of the Lanham Act, 15 U.S.C. § 1125(c).

100. The aforesaid conduct of Defendant is causing immediate and irreparable injury to Plaintiff and its goodwill and reputation, and will continue to damage Plaintiff unless enjoined by this Court.

101. Plaintiff has no adequate remedy at law.

## COUNT IV
## STATE TRADEMARK DILUTION AND INJURY TO BUSINESS REPUTATION

102. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 91 above, as if each were fully set forth herein.

103. Plaintiff has extensively and continuously promoted and used the Plaintiff's Trademark in the United States and the Plaintiff's Trademark has thereby become a distinctive, famous, and well-known symbol of Plaintiff's Exclusive Services, Trademark Registered Services and the Trademark Applied-for Services.

104. Defendant's unauthorized commercial use of the word "Provoke" in interstate commerce, the dominant portion of Plaintiff's Trademark wherein Plaintiff claims exclusive use, to denote the Exclusive Services and Defendant as the source thereof has diluted and continues to dilute the distinctive quality of Plaintiff's Trademark by lessening Plaintiff's capacity to identify and distinguish Plaintiff as the exclusive source of the services bearing or provided in conjunction with the word "Provoke".

105. Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with, and to cause the dilution of, the Plaintiff's Trademark, thereby irreparably injuring Plaintiff.

106. Defendant is causing and will continue to cause irreparable injury to Plaintiff's goodwill and business reputation, and dilution of the distinctiveness and value of the famous and distinctive Plaintiff's Trademark mark in violation of the New York anti-dilution act, N.Y. GEN. BUS. Law § 360-1.

107. Plaintiff has no adequate remedy at law.

## COUNT V
## COMMON LAW UNFAIR COMPETITION

108. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 97 above, as if each were fully set forth herein.

100. Defendant's unauthorized use of the word "Provoke" in interstate commerce, the dominant portion of Plaintiff's Trademark wherein Plaintiff claims exclusive use, to denote the Exclusive Services constitutes a false designation of origin and a false description or representation that Defendant's sale of such services is authorized by Plaintiff and is, thus, likely to confuse customers.

101. Defendants use of "Provoke" as stated herein divests Plaintiff of the ability to maintain the prestige and reputation of its brand.

102. Defendant is using "Provoke" as stated herein with full knowledge that it is associated exclusively with Plaintiff and exclusively designates both the Trademark Services and Trademark Applied-for Services

103. Defendant's acts of unfair competition are willful and deliberate and with an intent to reap the benefit of the goodwill and reputation associated with the Plaintiff's Trademark

104. Defendant's sale and distribution of the Exclusive Services under or in conjunction with the word "Provoke" constitutes common law unfair competition.

105. The aforesaid conduct of Defendant is causing immediate and irreparable injury to Plaintiff and to its goodwill and reputation, and will continue both to damage Plaintiff and to deceive the public unless enjoined by this Court.

106. Plaintiff has no adequate remedy at law.

## COUNT VI
## UNFAIR AND DECEPTIVE TRADE PRACTICES

107. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 106 above, as if each were fully set forth herein.

16

108. By reason of the acts set forth above, Defendant has been and continues to be engaged in deceptive acts or practices in the conduct of business, trade or commerce in violation of New York statute N.Y. GEN. BUS. Law § 349.

109. The public is likely to be damaged as a result of Defendant's deceptive trade practices or acts.

110. The aforesaid conduct of Defendant is causing immediate and irreparable injury to Plaintiff and to its goodwill and reputation, and will continue both to damage Plaintiff and to deceive the public unless enjoined by this Court.

111. Plaintiff has no adequate remedy at law.

**WHEREFORE**, Plaintiff Provoke Insights demands judgment as follows:

1. Enjoining DEFENDANT and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, and entities owned or controlled by DEFENDANT and all those in active concert and participation with DEFENDANT and each of them who receives notice directly or otherwise of such injunction from:

   a. imitating, copying, or making unauthorized use of the Plaintiff's Trademark;

   b. unless authorized by Plaintiff, importing, exporting, manufacturing, producing, distributing, circulating, selling, offering for sale, advertising, promoting, or displaying any product bearing the Plaintiff's Trademark or the word "Provoke";

   c. using any simulation, reproduction, counterfeit, copy, or colorable imitation of the Plaintiff's Trademark or the word "Provoke" in connection with the importation, promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation, or distribution of any of the Exclusive Services;

   d. using any false designation of origin or false description, or performing any act which is likely to lead members of the trade or the public to believe that any infringing product manufactured,

17

distributed, or sold by Defendant is in any manner associated or connected with Plaintiff, or is sold, manufactured, licensed, sponsored, approved, or authorized by Plaintiff;

    e. engaging in any other activity constituting unfair competition with Plaintiff, or constituting infringement of the Plaintiff's Trademark;

    f. taking any action, including through the use of the Plaintiff's Trademark or any simulation, reproduction, copy, or colorable imitation thereof, that dilutes the unique association between the "Provoke" and Plaintiff, or that tarnishes the reputation or image of Plaintiff;

    g. disposing of, destroying, altering, moving, removing, concealing, tampering with or in any manner secreting any business records (including computer records) of any kind, including invoices, correspondence, books of account, receipts, or other documentation relating to or referring in any manner to the manufacture, advertising, receipt, acquisition, importation, purchase, sale, offer for sale, or distribution of any merchandise bearing any simulation, reproduction, counterfeit, copy, or colorable imitation of the Plaintiff's Trademark or the word "Provoke" in conjunction with the Exclusive Services;

    i. instructing, assisting, aiding, or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (i) above.

2. Directing that Defendant make available to Plaintiff for review, inspection, and copying all books, records (including but not limited to all hard drives on computers used for business purposes, including but not limited to servers, as well as all computer disks and back-up media) and all other documents concerning all transactions relating to the purchase, sale, or unauthorized use of services, products or packaging incorporating the Plaintiff's Trademark or the word "Provoke" in conjunction with the Exclusive Services and provide Plaintiff with the names, addresses, and all

other contact information in its possession for the source(s) of such services, products and packaging, including all manufacturers, distributors, and suppliers.

3. Directing that Defendant recall from distributors, retailers, and all other recipients any and all services, products and packaging sold or distributed by Defendant under or in connection with the Plaintiff's Trademark or the word "Provoke" in conjunction with the Exclusive Services and, upon recall, to deliver such services or goods, in either or both cases, to Plaintiff.

4. Directing that Defendant cancel any advertising, regardless of the medium, using the Plaintiff's Trademark or the word "Provoke" in conjunction with the Exclusive Services.

5. Directing that Defendant deliver to Plaintiff's counsel for destruction, at Defendant's cost, all signs, promotional materials, advertising material, catalogs, and any other item that bears, contains, or incorporates the Plaintiff's Trademark or the word "Provoke" in conjunction with the Exclusive Services.

6. Requiring Defendant to account for and pay over to Plaintiff three times the profits realized by Defendant from its infringement of Plaintiff's Trademark and its unauthorized use of the word "Provoke" in conjunction with the Exclusive Services, and its unfair competition with Plaintiff.

7. Awarding Plaintiff its actual damages, trebled pursuant to 15 U.S.C. § 1117(a), arising out of Defendant's acts of willful unfair competition and trademark dilution.

8. Awarding to Plaintiff interest, including pre-judgment interest, on the foregoing sums.

9. Awarding Plaintiff its costs in this action, including reasonable attorneys' fees and expenses, pursuant to 15 U.S.C. § 1117(a).

10. Awarding Plaintiff exemplary and punitive damages to deter any future willful infringement in an amount to be determined at trial, but not less than $3,000,000.00

11. Directing such other action as the Court may deem appropriate to prevent the trade and public from deriving the erroneous impression that any goods or services offered, advertised, or promoted by or on behalf of Defendant are authorized by Plaintiff.

12. Directing that Defendant file with the Court and serve upon Plaintiff's counsel within thirty (30) days after entry of judgment a report in writing under oath setting forth in detail the manner and form in which Defendant have complied with the above.

13. Awarding Plaintiff such other and further relief as the Court may deem just and proper.

## Jury Demand

Plaintiff hereby demands a trial by jury as to all issues so triable.

Dated: New York, New York
      December 28, 2020

                              PIERCE & KWOK LLP

                              _____
                              Aaron H. Pierce, Esq.
                              299 Broadway, Ste. 1405
                              New York, New York 10007
                              (212) 882-1752
                              Aaron.pierce@piercekwok.com
                              *Attorneys for Plaintiff*
                              PROVOKE INSIGHTS, LLC